# EXHIBIT LL

Staff: <u>Committee on Housing & Buildings</u>
Austen Brandford, Senior Counsel
Audrey Son, Counsel
Genan Zilkha, Counsel
Jose Conde, Senior Policy Analyst
Charles Kim, Policy Analyst
Sarah Gastelum, Principal Financial Analyst
Luke Zangerle, Financial Analyst

Staff: <u>Committee on Consumer Affairs and Business Licensing</u>
Balqees Mihirig, Senior Counsel
Leah Skrzypiec, Policy Analyst
Sebastian Bacchi, Senior Financial Analyst



**THE NEW YORK CITY COUNCIL**
Jeffrey Baker, Legislative Director

<u>**COMMITTEE REPORT OF THE INFRASTRUCTURE AND GOVERNMENTAL AFFAIRS DIVISIONS**</u>
Terzah Nasser, Deputy Director, Infrastructure Division
Rachel Cordero, Deputy Director, Governmental Affairs Division

<u>**COMMITTEE ON HOUSING AND BUILDINGS**</u>
Hon. Robert E. Cornegy, Jr., Chair

<u>**COMMITTEE ON CONSUMER AFFAIRS AND BUSINESS LICENSING**</u>
Hon. Andrew Cohen, Chair

**April 28, 2020**

<u>INT. NO. 1912</u>: By the Speaker (Council Member Johnson) and Council Members Kallos, Van Bramer, Lander and Chin

1

| | |
|---|---|
| **TITLE:** | A Local Law in relation to ceasing the taking and restitution of property and the execution of money judgments by the city sheriff and marshals due to the impacts of COVID-19 |
| **ADMINISTRATIVE CODE:** | N/A |
| **INT. NO. 1936:** | By Council Members Torres, the Speaker (Council Member Johnson), Kallos, Van Bramer, Chin and Powers |
| **TITLE:** | A Local Law to amend the administrative code of the city of New York, in relation to amending the definition of harassment to include threats based on a person having been impacted by COVID-19 |
| **ADMINISTRATIVE CODE:** | Amends section 27-2004 |

## INTRODUCTION

On April 28, 2020, the Committee on Housing and Buildings, chaired by Council Member Robert Cornegy, Jr., and the Committee on Consumer Affairs, chaired by Council Member Andrew Cohen, will hold a hearing on two bills: Int. No. 1912, in relation to ceasing the taking and restitution of property and the execution of money judgments by the city sheriff and marshals due to the impacts of COVID-19, and Int. No. 1936, in relation to amending the definition of harassment to include threats based on a person having been impacted by COVID-19. The Committees expect to receive testimony from the New York City ("NYC" or the "City") Department of Housing Preservation and Development ("HPD"), the NYC Department of Consumer and Worker Protection ("DCWP"), the NYC Commission on Human Rights ("CCHR"), tenants, building owners, as well as other interested members of the public.

## BACKGROUND

## TENANTS AND COVID-19

The outbreak of the novel coronavirus, COVID-19, in the City of New York has resulted in a myriad of concerns for many New Yorkers, including loss of income, food insecurity and housing instability. In an effort to manage the spread of the virus, Governor Andrew Cuomo issued an executive order,[1] and subsequent continuing executive orders, to bring the State to a "PAUSE," which ordered the closing of all businesses deemed "nonessential."[2] The initial "PAUSE" order was issued on March 7, 2020, and businesses began to close or were required to reduce the number of in-person employees commencing on that date.[3] The closure of "nonessential" businesses eventually became applicable to 100% of employees at all nonessential businesses at 8:00 p.m. on March 22, 2020.[4]

In an analysis of the potential economic impacts of the pandemic on NYC households, the New York University Furman Center "estimate[s] that about 1,405,000 (or 34 percent) of the city's wage earners may be at risk of income loss"[5] as a result of mass layoffs or workplace closures, and that there are nearly 1,032,000 New York City households with at least one wage earner in an occupation more vulnerable to income loss.[6] Additionally, the number of unemployment claims filed with the State has skyrocketed since the "PAUSE": approximately 144,000 claims were filed in New York City the week of March 22, 2020, up 2,637% from the

---

[1] N.Y. Exec. Order No. 202 (Mar. 7, 2020) https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.pdf.
[2] *Id.*
[3] *Id.*
[4] N.Y. Exec. Order No. 202.8 (Mar. 20, 2020) https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.8.pdf.
[5] *What are the Housing Costs of Households Most Vulnerable to Job Layoffs? An Initial Analysis*, NYU Furman Center (Mar. 30, 2020) *available at* https://furmancenter.org/thestoop/entry/what-are-the-housing-costs-of-households-most-vulnerable-to-job-layoffs-an.
[6] *Id.*

same period in 2019.[7] With this sudden loss of income, many tenants in the City have been left wondering how they would make their rent payments.

In an effort to provide some relief to tenants, the State and Federal governments have each enacted measures to halt evictions for a period of time. Under Executive Order 202,[8] New York State has implemented a moratorium on evictions, meaning no evictions will be enforced against residential or commercial tenants. The moratorium is to remain in effect at least through June 20, 2020, although it remains unclear whether it will be extended after that date. Likewise, the Federal Coronavirus Aid, Relief, and Economic Security Act, otherwise known as the CARES Act, imposes a moratorium on evictions for all federally subsidized housing, applying to all new eviction actions for nonpayment of rent.[9] The New York State Attorney General has also issued guidance to tenants[10] that provides information about their rights, including information about harassment by landlords.

Although the eviction moratoriums serve as temporary stopgaps to allow tenants to remain in their apartments, they do not provide any kind of relief to tenants for rent owed during the moratoriums. Further, they do not guarantee that tenants unable to pay rent will be able to stay in their apartments once the moratoriums are lifted, or that tenants will be safe from landlord harassment on the basis of having been impacted by the virus. Indeed, housing advocates have reported that tenants are confused and uncertain as to what will happen once the moratoriums are lifted, including whether landlords will suddenly flood the housing courts with eviction actions

---

[7] Corina Knoll, Azi Paybarah, Jacob Mensche and Elaine Chen, *11 Numbers That Show How the Coronavirus Has Changes N.Y.C.*, The New York Times, (Apr. 20, 2020) *available at* https://www.nytimes.com/2020/04/20/nyregion/coronavirus-nyc-numbers-unemployment.html .
[8] *Supra*, note 2.
[9] Coronavirus Aid, Relief, and Economic Security Act, § 4024 (Mar. 27, 2020) https://www.congress.gov/116/bills/hr748/BILLS-116hr748eas.pdf.
[10] *Guidance on Coronavirus Resources and Warnings Against Consumer Scams: Housing Rights*, N.Y. Attorney General available at https://ag.ny.gov/coronavirus#housingrights (last accessed Apr. 24, 2020).

against all tenants who were unable to make rent during the moratoriums.[11] In this hearing, the Committees hope to learn more about tenant concerns arising from this crisis, and whether any additional legislative measures can help rent-burdened tenants as the City prepares for the long-term economic effects of the virus.

## LEGISLATION

Below is a brief summary of the legislation being heard by the Committees at this hearing. These summaries are intended for informational purposes only and do not substitute for legal counsel. For more detailed information, you should review the full text of the bills, which are attached below.

**Int. No. 1912, a local law in relation to ceasing the taking and restitution of property and the execution of money judgments by the city sheriff and marshals due to the impacts of COVID-19**

This bill would prevent the City Sheriff and Marshals from taking certain actions with respect to the taking and restitution of property or the execution of money judgments for specified timeframes beyond the duration of state and federal eviction moratoriums.

This legislation would take effect immediately.

**Int. No. 1936, A Local Law to amend the New York city charter and the New York city building code in relation to amending the definition of harassment to include threats based on a person having been impacted by COVID-19**

---

[11] *See*, *e.g.*, Caroline Splvack, *New York lawmakers seek to prevent 'tidal wave' of evictions*, Curbed New York (Apr. 7, 2020, 3:22 p.m.) *available at* https://ny.curbed.com/2020/4/7/21212353/new-york-coronavirus-rent-eviction-bill-covid-19.

5

This bill would expand the definition of tenant harassment to protect individuals who may be harassed due to their status as an essential employee or a person impacted by COVID-19, or whether they received a rent concession or forbearance for any rent owed during the COVID-19 crisis.

This legislation would take effect immediately.

Int. No. 1912

By the Speaker (Council Member Johnson) and Council Members Kallos, Van Bramer, Lander and Chin

A Local Law in relation to ceasing the taking and restitution of property and the execution of money judgments by the city sheriff and marshals due to the impacts of COVID-19

Be it enacted by the Council as follows:

1    Section 1. As used in this local law, the following terms have the following meanings:

2    COVID-19. The term "COVID-19" means the 2019 novel coronavirus or 2019-nCoV.

3    COVID-19 state disaster emergency. The term "COVID-19 state disaster emergency"
4    means the state disaster emergency declared by the governor in executive order number 202
5    issued on March 7, 2020.

6    Federal eviction moratorium. The term "federal eviction moratorium" means the
7    moratorium on certain residential evictions set forth in section 4024 of the coronavirus aid, relief,
8    and economic security, or CARES, act and any subsequent amendments to such section.

9    First suspension date. The term "first suspension date" means the later of (i) the end of
10   the first month that commences after the expiration of the state eviction moratorium, (ii) the end
11   of the first month that commences after the expiration of the federal eviction moratorium, or (iii)
12   September 30, 2020.

13   Second suspension date. The term "second suspension date" means the later of (i) the end
14   of the seventh month that commences after the expiration of the state eviction moratorium, (ii)
15   the end of the seventh month that commences after the expiration of the federal eviction
16   moratorium, or (iii) April 1, 2021.

1  State eviction moratorium. The term "state eviction moratorium" means the moratorium
2  on enforcement of evictions of residential and commercial tenants set forth in executive order
3  number 202.8, as issued by the governor on March 20, 2020 and thereafter extended.
4  § 2. Until the first suspension date, the city sheriff and, pursuant to section 1609 of the
5  New York city civil court act, the marshals shall take no action with respect to the taking and
6  restitution of property or the execution of money judgments unless:
7  1. such action or type of action has been ordered by the governor or mayor pursuant to
8  article 2-B of the executive law or is necessary in order to carry out an order issued by the
9  governor or mayor pursuant to such article; or
10  2. such action or type of action is in connection with a matter under the jurisdiction of the
11  family court.
12  § 3. a. Until the second suspension date, the city sheriff and, pursuant to section 1609 of
13  the New York city civil court act, the marshals shall take no action with respect to the taking and
14  restitution of property or the execution of money judgments unless:
15  1. such action or type of action has been ordered by the governor or mayor pursuant to
16  article 2-B of the executive law or is necessary in order to carry out an order issued by the
17  governor or mayor pursuant to such article;
18  2. such action or type of action is in connection with a matter under the jurisdiction of the
19  family court; or
20  3. the party against whom such taking and restitution or such execution is sought has
21  been provided a reasonable opportunity to show the court having jurisdiction over the matter that
22  such party suffered a substantial loss of income because of COVID-19 and such court has found
23  that such party has not suffered such a loss or has effectively waived such opportunity.

1  b. For the purposes of subdivision a of this section, a party has suffered a substantial loss of income because of COVID-19 in the following instances:

3  1. The party is a natural person and between March 7, 2020 and the first suspension date, inclusive, experienced two or more weeks in which (i) the person claimed federal or state unemployment insurance benefits in connection with a claim that was filed on or after March 7, 2020 or (ii) the person worked fewer than three days and earned less than $504 because of one or more of the following situations:

8  (a) the person was diagnosed with COVID-19 or was experiencing symptoms of COVID-19 and seeking a medical diagnosis;

10  (b) a member of the person's household was diagnosed with COVID-19;

11  (c) the person was providing care for a family member or a member of the person's household who was diagnosed with COVID-19;

13  (d) a member of the person's household for whom the person had primary caregiving responsibility was unable to attend school or another facility that was closed as a direct result of the COVID-19 state disaster emergency and such school or facility care was required for the person to work;

17  (e) the person was unable to reach the person's place of employment because of a quarantine imposed as a direct result of the COVID-19 state disaster emergency;

19  (f) the person was unable to reach the person's place of employment because the person had been advised by a health care provider to self-quarantine due to concerns related to COVID-19;

22  (g) the person was scheduled to commence employment and did not have a job or was unable to reach the job as a direct result of the COVID-19 state disaster emergency;

1     (h) the person became the breadwinner or major supporter for a household because the
2 head of the household died as a direct result of COVID-19;
3     (i) the person quit a job as a direct result of COVID-19; or
4     (j) the person's place of employment is closed as a direct result of the COVID-19 state
5 disaster emergency;
6     2. The party is a business and (i) it was subject to seating, occupancy or on-premises
7 service limitations pursuant to an executive order issued by the governor or mayor during the
8 COVID-19 period or (ii) its revenues for any three-month period between March 7, 2020 and the
9 first suspension date, inclusive, were less than 50 percent of its revenues for the same period in
10 2019 or less than 50 percent of its aggregate revenues for the months of December 2019, January
11 2020, and February 2020; or
12     3. The party is a natural person who is being held liable for a debt or other obligation of a
13 business that satisfies the requirements of paragraph 2 of this subdivision.
14     § 4. This local law takes effect immediately.

LS 14763
4/20/20 4:39PM

Int. No. 1936

By Council Member Torres, the Speaker (Council Member Johnson), Kallos, Van Bramer, Chin and Powers

A Local Law to amend the administrative code of the city of New York, in relation to amending the definition of harassment to include threats based on a person having been impacted by COVID-19

Be it enacted by the Council as follows:

1    Section 1. Subparagraph f-5 of paragraph 48 of subdivision a of section 27-2004 of the
2    administrative code of the city of New York, as added by local law number 48 for the year 2018,
3    is amended to read as follows:
4        f-5. threatening any person lawfully entitled to occupancy of such dwelling unit based on
5    such person's actual or perceived age, race, creed, color, national origin, gender, disability,
6    marital status, partnership status, caregiver status, uniformed service, sexual orientation, alienage
7    or citizenship status, status as a victim of domestic violence, status as a victim of sex offenses or
8    stalking, lawful source of income, status as an essential employee, status as a person impacted by
9    COVID-19, or receipt of a rent concession or forbearance for any rent owed during the COVID-
10   19 period or because children are, may be or would be residing in such dwelling unit, as such
11   terms are defined in sections 8-102 and 8-107.1 of the code; provided that for the purposes of
12   this subparagraph:
13       (1) the term "COVID-19 period" means March 7, 2020 through the later of (i) the end of
14   the first month that commences after the expiration of the moratorium on enforcement of
15   evictions of residential and commercial tenants set forth in executive order number 202.8, as
16   issued by the governor on March 20, 2020 and thereafter extended, (ii) the end of the first month
17   that commences after the expiration of the moratorium on certain residential evictions set forth in

section 4024 of the federal coronavirus aid, relief, and economic security, or CARES, act and any subsequent amendments to such section or (iii) September 30, 2020, inclusive;

(2) the term "essential employee" means a person employed by or permitted to work at or for a business classified as an essential business by the New York state department of economic development in accordance with executive order number 202.6 as issued by the governor on March 18, 2020 and extended thereafter; and

(3) a person is "impacted by COVID-19" if such person experienced one or more of the following situations:

(i) the person was diagnosed with COVID-19 or is experiencing symptoms of COVID-19 and seeking a medical diagnosis; provided that for the purposes of this subparagraph, the term "COVID-19" means the 2019 novel coronavirus or 2019-nCoV;

(ii) a member of the person's household was diagnosed with COVID-19;

(iii) the person was providing care for a family member or a member of the person's household who was diagnosed with COVID-19;

(iv) a member of the person's household for whom the person had primary caregiving responsibility was unable to attend school or another facility that was closed as a direct result of the COVID-19 state disaster emergency and such school or facility care was required for the person to work; provided that for the purposes of this subparagraph, the term "COVID-19 state disaster emergency" means the state disaster emergency declared by the governor in executive order number 202 issued on March 7, 2020;

(v) the person was unable to reach the person's place of employment because of a quarantine imposed as a direct result of the COVID-19 state disaster emergency;

1    (vi) the person was unable to reach the person's place of employment because the person
2    had been advised by a health care provider to self-quarantine due to concerns related to COVID-
3    19;
4    (vii) the person was scheduled to commence employment and did not have a job or was
5    unable to reach the job as a direct result of the COVID-19 state disaster emergency;
6    (viii) the person became the breadwinner or major supporter for a household because the
7    head of the household died as a direct result of COVID-19;
8    (ix) the person quit a job as a direct result of COVID-19; or
9    (x) the person's place of employment is closed as a direct result of the COVID-19 state
10   disaster emergency;
11   § 2. This local law takes effect immediately.

LS 14513
4/20/20 1:52AM