**Patterson Belknap Webb & Tyler LLP**

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

September 9, 2020

Stephen P. Younger
Partner
Direct: (212) 336-2685
Fax: (212) 336-7981
spyounger@pbwt.com

*By ECF*

Hon. Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

                       Re:   *Marcia Melendez, et al. v. The City of New York, et al.*,
                                 No. 20 Civ. 5301 (RA)

Dear Judge Abrams:

        We write on behalf of Plaintiffs in the above-captioned action pursuant to the Court's September 4, 2020 Order (the "Order"), instructing the parties to submit letter briefs with respect to three questions: 1) whether discovery will advance the arguments presented, and if so, how; 2) whether Plaintiffs have standing to challenge the Harassment Laws and which Plaintiffs, if any, have standing to challenge the Guaranty Law; and 3) if the Court were to find the Harassment Laws do not violate the First Amendment of the U.S. Constitution, on what grounds it could find that the laws violate Article I, Section 8 of the New York State Constitution. We address each question below.

**I.    No Further Discovery Is Necessary for the Court to Decide Plaintiffs' Motion for Preliminary Injunctive and Declaratory Relief**

        No additional discovery is needed here. As Defendants have already conceded, Plaintiffs' motion for preliminary injunctive and declaratory relief (the "Motion") is based largely on issues of law (*see* Def. Opp. at 9), and all necessary facts are currently in the record. While Defendants now quibble over several aspects of the lease produced on behalf of Plaintiffs Elias Bochner and 287 7th Avenue Realty LLC (the "Bochner Plaintiffs"), since the inception of this case, they have maintained that only disclosure of the relevant leases was necessary to resolve the pending Motion. And that discovery has been fully provided by the Bochner Plaintiffs.

        At the outset of this case, after conferring as directed by the Court, the parties agreed that only limited discovery was necessary to resolve the Motion.[1] (ECF No. 34)

---

[1] The parties also agreed that an evidentiary hearing was unnecessary because, with limited discovery, there would be no relevant facts in dispute. *See Charette v. Town of Oyster Bay*, 159 F.3d 749, 755

Hon. Ronnie Abrams
September 9, 2020
Page 2

Specifically, the parties agreed to restrict discovery to all commercial leases and other commercial rental agreements involving real property between Plaintiffs and third-party commercial tenants. *Id*. On July 28, 2020, Defendants served their requests for production on Plaintiffs. (Ex. 1) Just three days later, on July 31, 2020, pursuant to that agreement, Plaintiffs promptly produced all responsive documents. (Ex. 2) Defendants never raised an objection to Plaintiffs' production, nor did they claim that the production was deficient in any way.

As per the prior agreement relating to discovery, on September 2, 2020, approximately 40 minutes after filing their Amended Complaint, Plaintiffs produced to Defendants lease documentation relevant to the Bochner Plaintiffs, consistent with the parties' prior agreement on discovery.[2] (Ex. 3) In addition, on September 8, 2020, Plaintiffs produced additional documents evidencing: 1) that Plaintiff 287 7th Avenue Realty LLC is party to the lease with Sunburger 1 LLC for the commercial premises located at 287 7th Avenue in Manhattan; and 2) that the lease between 287 7th Avenue Realty LLC and Sunburger 1 LLC remains in effect. (*See* Ex. 4)[3]

Accordingly, no further discovery is necessary to decide the Motion. Any further delay for irrelevant discovery will only further prejudice Plaintiffs, who continue to bear the burden of the unconstitutional Laws challenged in this case. Indeed, Plaintiff Yang, feeling the brunt of these Laws, already chose to give up any claim to back rent to induce her commercial tenant to vacate the premises and to avoid further harm from her inability to collect rent.

Plaintiffs' Amended Complaint (ECF No. 58) does not change the posture or legal arguments of this case. The Amended Complaint, which added the Bochner Plaintiffs, made only modest additional allegations to support the very same claims that had been asserted since the first day of this case. Almost all of those allegations parallel Plaintiff Bochner's declaration, which was previously filed as evidence in further support of Plaintiffs' Motion. (ECF No. 52) As explained at the time it was filed, nothing in the Amended Complaint materially altered any of Plaintiffs' claims or arguments in the case, including with respect to the Contracts Clause claim.[4]

---

(2d Cir. 1998) ("An evidentiary hearing is not required to [decide a motion for a preliminary injunction] when the relevant facts are not in dispute . . . .").

[2] Defendants filed that lease on the Court's docket as Exhibit A to their letter of September 4, 2020, (*see* ECF No. 60-1) and it is also attached to the Supplemental Declaration of Elias Bochner, (*see* Ex. 5).

[3] Without first raising these issues with us, by letter dated September 4, 2020, Defendants' counsel wrote the Court complaining that these documents had not been produced. We produced them within a single business day thereafter. We have asked Defendants' counsel if there are any further documents they need from the Bochner Plaintiffs; as of the filing of this letter, we have not received a response.

[4] Plaintiffs detailed the reasons for filing the Amended Complaint in a letter accompanying its filing. (*See* ECF No. 59) While Defendants claimed in their September 4 letter that Plaintiffs should have given

Where, as here, the parties have agreed that only limited document discovery is needed to resolve a motion and Defendants have failed to show why additional discovery is warranted, courts routinely deny any further discovery. *See, e.g.*, *Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 477 (S.D.N.Y. 2019) (honoring parties' request concerning discovery where "parties stated that 'no discovery is necessary in advance of the Court's ruling on preliminary injunction motions because the issues raised by the motions are primarily legal in nature'"); *Consol. Gold Fields, PLC v. Anglo Am. Corp. of S. Africa*, 713 F. Supp. 1457, 1475 (S.D.N.Y. 1989) (disallowing further discovery on preliminary injunction motion where party "made no showing that discovery [wa]s necessary regarding any factual matter in dispute"); *Watkins Inc. v. Lewis*, No. CIV.02-3708(RHK/AJB), 2002 WL 31319491, at *1 n.1 (D. Minn. Oct. 11, 2002), *aff'd*, 346 F.3d 841 (8th Cir. 2003) (where parties agreed no discovery was necessary for resolution of motion for preliminary injunctive relief, court proceeded to address the motion).

The parties' earlier agreement as to the scope of any necessary discovery applies equally to the Bochner Plaintiffs' claims in the Amended Complaint as it did to the claims of the other Plaintiffs in this case. Plaintiffs have consistently honored that agreement, and did so again within an hour of filing the Amended Complaint by supplementing their production so as to provide Defendants with the relevant lease. And Plaintiffs quickly supplemented that production once Defendants raised issues about it.

Accordingly, no further discovery is needed to decide the pending Motion, and Plaintiffs would be harmed if this case is delayed any further.[5]

---

notice a week earlier of a supposed intention to amend, no such notice could have been given at that time. It was not until September 2, 2020, when the Yang Plaintiffs signed a Surrender Agreement with their tenant – given their inability to survive without collecting rent – that their standing to seek prospective injunctive relief was at all in question. Within hours of learning of this development, Plaintiffs' counsel filed an Amended Complaint, as of right, joining the Bochner Plaintiffs and obviating any standing issue.

[5] Defendants should not now be allowed to back-track on the parties' agreement as to the scope of necessary discovery. *See, e.g.*, *Genzyme Corp. v. Lupin Ltd.*, No. JFM-09-2589, 2011 WL 2490603, at *2 (D. Md. June 21, 2011) (denying further discovery "in contravention of the parties' binding discovery agreement"); *HM Compounding Servs., LLC v. Express Scripts, Inc.*, No. 4:14-CV-1858-JAR, 2016 WL 2609796, at *3 (E.D. Mo. May 6, 2016) (denying further discovery "as beyond the agreed upon scope of discovery").

## II. Plaintiffs Have Standing to Challenge the Harassment and Guaranty Laws

### A. *Plaintiffs Marcia Melendez, Jarican Realty Inc., 1025 Pacific LLC, Ling Yang, and Haight Trade LLC Have Standing to Challenge the Harassment Laws*

Plaintiffs Marcia Melendez, Jarican Realty Inc., 1025 Pacific LLC, Ling Yang, and Haight Trade LLC (the "Harassment Law Plaintiffs") each has standing to challenge the Harassment Laws because they have a pre-enforcement injury-in-fact, which was caused by Defendants and is redressable by a court order. There should be no issue about this point as Defendants have previously represented to this Court that they have "never argued" that Plaintiffs lack standing to challenge the Harassment Laws. (Def. Reply at 2 n.3)

#### 1. Legal Standard for Pre-Enforcement Standing

Article III standing requires an injury-in-fact, causation, and redressability.[6] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). An injury-in-fact is an invasion of a legally protected interest that is both a) concrete and particularized; and b) actual or imminent, not conjectural or hypothetical. *Id.* Causation exists where the injury is fairly traceable to the challenged action of the defendant. *Id.* Redressability exists where it is likely that the injury will be redressed by a favorable decision. *Id.* at 561.

In pre-enforcement cases implicating First Amendment rights, the injury-in-fact inquiry is "somewhat relaxed." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013). The requisite injury exists if a) plaintiffs "have alleged an intention to engage in a course of conduct arguably affected with a constitutional interest"; b) plaintiffs' "intended future conduct is arguably proscribed" by the law at issue; and c) there exists a "credible threat of [enforcement] thereunder."[7] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159–65 (2014) (quotations omitted); *see also, e.g.*, *Woodhull Freedom Found. v. United States*, 948 F.3d 363, 372 (D.C. Cir. 2020). Plaintiffs may also challenge laws under preemption doctrines if they meet this pre-enforcement standard. *See Pacific Capital Bank NA v. Conn.*, 542 F.3d 341, 350 (2d Cir. 2008).

Causation is established as to individual defendants if "the named defendants [] possess authority to enforce the complained-of provision." *Digital Recognition Network, Inc. v.*

---

[6] In pre-enforcement cases, Article III standing and ripeness inquiries are substantively identical. *See Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013); *Miller v. City of Wickliffe, Ohio*, 852 F.3d 497, 506 (6th Cir. 2017).

[7] This standard applies regardless of whether a challenge is facial or as applied. *See, e.g.*, *Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2016).

*Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015). And, as to municipal defendants, "alleging that a municipal policy or ordinance is itself unconstitutional is always sufficient to establish the necessary causal connection between the municipality and the constitutional deprivation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125–26 (2d Cir. 2004) (Sotomayor, *J.*); *see also Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 801–03 (7th Cir. 2016) (causation established as to municipality in pre-enforcement First Amendment challenge based on municipality's having passed the unconstitutional ordinance).

Finally, redressability is established if the court could prevent enforcement of the unconstitutional restriction. *See Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 72 (2d Cir. 2019).

2. <u>The Harassment Law Plaintiffs Intend to Engage in Constitutionally Protected Conduct</u>

The Harassment Law Plaintiffs have suffered a pre-enforcement injury-in-fact. The first requirement for an injury-in-fact is an "allege[d] [] intention to engage in a course of conduct arguably affected with a constitutional interest." *Susan B. Anthony List*, 573 U.S. at 159. Conduct that "involves [protected] speech" is "arguably affected with a constitutional interest." *Woodhull Freedom Found.*, 948 F.3d at 372. Here, there is no dispute that the Harassment Law Plaintiffs' intended speech – *i.e.*, demanding rent and communicating the consequences of unpaid rent – is protected commercial speech. (Plf. Reply at 3); *see also ACA Int'l v. Healey*, No. CV 20-10767-RGS, 2020 WL 2198366, at *8 (D. Mass. May 6, 2020). Nor do Defendants dispute that the Harassment Law Plaintiffs intend to engage in a protected course of conduct. (*See* Plf. Reply at 3–4) Thus, this first requirement is satisfied.

3. <u>The Relevant Conduct Is Arguably Proscribed by the Harassment Laws</u>

The second requirement for an injury-in-fact is that the "intended future conduct is arguably proscribed" by the Harassment Laws. *Susan B. Anthony List*, 573 U.S. at 162. In the Second Circuit, this requirement is met even if there "may be other, perhaps even better" constructions of a law, as long as the plaintiff's interpretation is "reasonable enough that it [could] legitimately fear that it [would] face enforcement of the statute" pursuant to "the definition proffered by" the plaintiff. *Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 384 (2d Cir. 2000); *see also Picard v. Clark*, No. 19-CV-3059 (DLC), 2019 WL 6498306, at *3 (S.D.N.Y. Dec. 2, 2019).

For the reasons Plaintiffs have previously detailed, the speech at issue is not only arguably proscribed but, in fact, is actually proscribed by the Harassment Laws. (Plf. Br. at 18–19; Plf. Reply at 3–7) Plaintiffs have submitted unchallenged declarations showing their reasonable fear of harassment claims that have inhibited their serving rent demands. (Melendez Decl. ¶¶ 21, 23–25, 29; Yang Decl. ¶¶ 34–35; Melendez Reply Decl. ¶¶ 4–9) The Harassment Laws expose Plaintiffs to the risk of claims for substantial fines, punitive damages, and legal

fees. N.Y.C. Admin. Code §§ 22-903(a), 27-2005(d), 27-2115(h)(1), 27-2115(o). In the face of these draconian penalties, Plaintiffs have understandably avoided serving rent demands. And in Plaintiff Melendez's situation, she has previously been the target of a harassment claim from one of her tenants, so she has been naturally circumspect given the City's new Harassment Laws. (Melendez Decl. ¶ 29; Melendez Reply Decl. ¶ 5)

In sum, the Harassment Law Plaintiffs' intended course of conduct is arguably proscribed by the Harassment Laws because Plaintiffs' interpretation of the statute is – at the very least – "reasonable enough." *Vt. Right to Life Comm.*, 221 F.3d at 384. And Defendants do not challenge standing on this issue. (Def. Reply at 2 n.3)

4. The Harassment Law Plaintiffs Face a Credible Threat of Enforcement

The final requirement for an injury-in-fact is also met here because there is a credible threat of enforcement. Courts presume that the government intends to enforce a law "in the absence of a disavowal by the government or another reason to conclude" it has no such intent. *Tweed-New Haven Airport Auth.*, 930 F.3d at 71. Defendants have not disavowed any intention to enforce the law against landlords who engage in the speech at issue here. Although Defendants have taken the position that such speech is not proscribed by these Laws, Plaintiffs still face a credible threat of enforcement because Defendants are empowered to enforce Sections 22-902(a) and 27-2004(a)(48), and "there is nothing that prevents [Defendants] from changing [their] mind." *Vt. Right to Life Comm.*, 221 F.3d at 383.

The Harassment Laws, moreover, may be enforced by private plaintiffs, which "bolster[s]" the threat of enforcement. *Woodhull Freedom Found.,* 948 F.3d at 373. Indeed, several well-capitalized companies have already asserted claims under these new Laws. (Younger Decl., Exs. 6–7, Younger Reply Decl., Ex. 6) And, Plaintiff Melendez herself has been the subject of harassment claims, giving her sound reason to be concerned about such private enforcement. (Melendez Decl. ¶ 29; Melendez Reply Decl. ¶ 5) Notably, it is well-settled in this Circuit that plaintiffs may bring First Amendment challenges "when it is not apparent whether a plaintiff is subject to the statute and when the government actively disputes that it is." *Hedges v. Obama*, 724 F.3d 170, 197–98 (2d Cir. 2013) (construing *Vt. Right to Life Comm.*).

5. There Is No Dispute That Causation and Redressability Are Satisfied

The remaining standing requirements – *i.e.,* causation and redressability – are also met here. There is causation as to the individual Defendants because they have enforcement authority under the Harassment Laws, *Digital Recognition Network*, 803 F.3d at 958, and as to New York City because "an employee's act of enforcing an unconstitutional municipal policy may be considered the act of the municipality itself." *Amnesty Am.*, 361 F.3d at 125–26. There is also redressability because an injunction order by this Court would prevent Plaintiffs' constitutional deprivation. *See Tweed-New Haven Airport Auth.*, 930 F.3d at 72.

Accordingly, as Defendants concede, the Harassment Law Plaintiffs plainly have standing to challenge the Harassment Laws under the First and Fourteenth Amendments of the U.S. Constitution, Article I, Section 8 of the New York State Constitution, and New York State preemption law.

    B.    *The Bochner Plaintiffs Have Standing to Challenge the Guaranty Law*

In their September 4 letter, Defendants suggested that the Bochner Plaintiffs lack standing to challenge the Guaranty Law because: 1) 287 7th Avenue LLC had not produced evidence that it assumed the lease agreement between Sunburger 1 LLC and 287 7th Avenue LLC's predecessor-in-interest (the "Lease"); and 2) according to Defendants, the Lease was supposedly only effective between July 1, 2006 and June 30, 2013.[8] (*See* ECF No. 65 at 2–3) Both arguments are misplaced.

Section 29 of the Lease provides that:

> If the fee interest of the OWNER in Lot 3 is transferred to a subsequent OWNER, the subsequent OWNER shall be deemed to have assumed all of the OWNER obligations pursuant to this Lease upon delivery of the deed to the subsequent OWNER, and all of [the] OWNER obligations hereto shall be deemed to touch and concern the land and to run with the land.

(Ex. 5, BOCHNER00000063–64) The Lease further specifies that "[t]he covenants, conditions and agreements contained in this Lease shall bind and inure to the benefit of OWNER and TENANT and their respective . . . successors . . . ." (*Id.*, BOCHNER00000063)

The Lease explicitly identifies Lot 3 as the building with the address of 287 7th Avenue, New York, New York. (*Id.*, BOCHNER00000001-02) Plaintiff 287 7th Avenue Realty LLC currently owns Lot 3. (ECF No. 52, Bochner Decl. ¶ 3) Therefore, the terms of the Lease – which Defendants do not substantively dispute – make clear that 287 7th Avenue Realty LLC assumed the Lease, and is entitled to the benefit of all covenants, conditions, and agreements contained therein – including the Good Guy Guaranty, which is incorporated by reference (*Id.*, BOCHNER00000062), under the Lease's plain terms. Additionally, the Bochner Plaintiffs have produced documents to Defendants, including a deed for the property located at 287 7th Avenue, which make clear that Plaintiff 287 7th Avenue Realty LLC is the current counterparty to the

---

[8] Defendants' position is not really a standing argument but an unsupported challenge to the merits of the Bochner Plaintiffs' Guaranty Law claim.

Hon. Ronnie Abrams
September 9, 2020
Page 8

Lease.  (*See* Ex. 5)  And Plaintiff Bochner has submitted a supplemental declaration confirming all of this.  (*See id*.)

The Lease further provides that Sunburger 1 LLC has the option to extend the lease twice, for a total of an additional eight years, and the Lease provides for rent amounts through June 30, 2021.  (Ex. 5, BOCHNER00000005-6)  Pursuant to those provisions, Sunburger 1 LLC exercised both of its options to extend the lease term to June 30, 2021.  (ECF No. 52, Bochner Decl. ¶¶ 15–16 (testifying that Sunburger 1 LLC is the current commercial tenant at 287 7th Avenue); Ex. 5 ¶ 9)  Accordingly, the Lease remains effective.

The record is thus quite clear that Bochner and 287 7th Avenue LLC have standing to challenge the Guaranty Law.  The Guaranty Law has caused them each an injury by "invad[ing their] legally protected interest" in a manner that is "both (a) concrete and particularized and (b) actual or imminent."  *Lujan*, 504 U.S. at 560.  As explained in Plaintiffs' briefs, the Guaranty Law permanently deprives these Plaintiffs of their only remedy to collect a half-year's rent from their defaulting commercial tenants, which are often judgment-proof, and it does so without any conditions or means of making these Plaintiffs whole.  (Plf. Reply at 11–14)  And notably, the City Council is considering extending the period for which pre-existing guaranty obligations are nullified through March 2021 (*i.e.*, a full year).  (*See* ECF No. 63)  The Bochner Plaintiffs are at risk of losing over $100,000 — a half year's rental income — due to the Guaranty Law. And there is no question that the Defendants caused these Plaintiffs' injury by enacting the Guaranty Law, *Amnesty Am.*, 361 F.3d at 125–26, which improperly shifted the economic burden from one group – *i.e.*, commercial tenants – to a less-favored group – *i.e.*, landlords.  *See, e.g.*, *Equip. Mfrs. Inst. v. Janklow*, 300 F.3d 842, 860–61 (8th Cir. 2002).[9]

Accordingly, Bochner and 287 7th Avenue Realty LLC each have standing to challenge the Guaranty Law and are entitled to prospective injunctive relief.  *See Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978) (law requiring mandatory funding of pension obligations violated Contracts Clause); *W.B. Worthen Co. v. Thomas*, 292 U.S. 426 (1934) (law limiting remedy for enforcement of debt violated Contracts Clause); *Equip. Mfrs.*, 300 F.3d at 860–61; *HRPT Prop. Tr. v. Lingle*, 715 F. Supp. 2d 115 (D. Haw. 2010) (law altering lease renewal terms violated Contracts Clause); *Ross v. City of Berkeley*, 655 F. Supp. 820 (N.D. Cal. 1987) (law prohibiting owner occupancy by lessor violated Contracts Clause).

---

[9] In their September 4 letter, Defendants' counsel erroneously claims that the Bochner Plaintiffs' lease gives them "several strong remedies" in the event of a default. (ECF No. 60 at 3 n.6)  But the late charges they cite are worthless if the tenant lacks assets to pay them, and lease cancellation and eviction are unavailable given the current eviction moratorium, which only means that unpaid back rent will continue to accumulate, which is why a guaranty agreement is often critical to commercial leasing arrangements with small businesses.

Hon. Ronnie Abrams
September 9, 2020
Page 9

In their September 4 letter, Defendants make the hyper-technical argument that the Bochner Plaintiffs were not listed in the original notice of motion seeking injunctive and declaratory relief. Should the Court believe it necessary, Plaintiffs hereby seek leave to file a notice of motion (as attached hereto as Exhibit 6) for preliminary injunctive and declaratory relief on behalf of Plaintiffs Bochner and 287 7th Avenue Realty LLC based on the same arguments set forth in the motion papers that have now been fully submitted.

### III. The Harassment Law Plaintiffs Are Likely to Succeed on the Merits of Their Speech Claims Under Article I, Section 8 of the New York State Constitution

Independent of the Court's decision on the Harassment Law Plaintiffs' claims under the First Amendment to the U.S. Constitution, the Court can hold that these Plaintiffs are likely to succeed on the merits of their claims under Article I, Section 8 of the New York State Constitution. That State constitutional provision offers broader protection for speech than does the U.S. Constitution. *See People ex rel. Arcara v. Cloud Books, Inc.*, 68 N.Y.2d 553, 555–58 (1986); (*see also* Plf. Br. at 15 n.4).

#### A. The New York State Constitution Offers Broader Protection for Speech than the U.S. Constitution

While the First Amendment to the U.S. Constitution provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press," Article I, Section 8 of the New York State Constitution protects speech in broader language, which provides that "[e]very citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or the press." Distinguishing these two provisions, the New York Court of Appeals has repeatedly held that the free speech protection in the New York State Constitution is "'broader than the minimum required by' the Federal Constitution." *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 249 (1991) (quoting *O'Neill v. Oakgrove Const., Inc.*, 71 N.Y.2d 521, 529 (1988)). The "[e]xpansive language of [the] State constitutional guarantee" reflects "the deliberate choice of the New York State Constitutional Convention not to follow the language of the First Amendment," which was "ratified 30 years earlier." *Id.* The Court of Appeals, moreover, has emphasized both New York's history as "a hospitable climate for the free exchange of ideas," and the fact that freedom of expression is "particularly suited to resolution as a matter of State common law and State constitutional law, [because] the Supreme Court under the Federal Constitution fix[es] only the minimum standards applicable throughout the Nation, [while] the State courts supplement[] those standards to meet local needs and expectations." *Id.* at 248–49. Indeed, "[t]here is probably no area in which . . . State constitutional rights serve their intended purposes, [more] than in the area dealing with freedom of expression." *Beach v. Shanley*, 62 N.Y.2d 241, 255 (1984) (Wachtler, *J.*, concurring).

  B. *The "Incidental Effects" of the Harassment Laws on Protected Speech Are Unconstitutional Under Article I, Section 8 of the New York State Constitution*

  Regardless of how this Court rules on Plaintiffs' claims under the First Amendment to the U.S. Constitution, New York State's free speech protection weighs even more heavily in favor of Plaintiffs' speech-based claims for two reasons.

  *First*, the New York State Constitution obviates Defendants' argument regarding the limits of the Harassment Laws' coverage, because, regardless of whether the Harassment Laws actually proscribe Plaintiffs' intended speech – and they do – those Laws, at the very least, *incidentally affect* and thereby inhibit the Harassment Law Plaintiffs' speech. (*See* Plf. Br. at 12–13; Plf. Reply at 2, 5 & 19 n.17; Melendez Decl. ¶¶ 21, 23–25, 29; Yang Decl. ¶¶ 34–35; Melendez Reply Decl. ¶¶ 4–9) The text of the New York State Constitution's free speech protection differs from the First Amendment in that it reflects a "deliberate choice" to ban laws that "*restrain or abridge* the liberty of speech," rather than only those that abridge speech. Accordingly, inhibitions on speech implicate the New York State Constitution even though they may fall short of implicating the First Amendment. *See Andryeyeva v. New York Health Care, Inc.*, 33 N.Y.3d 152, 176 (2019) (provisions must be read "to avoid surplusage").

  Consistent with these principles, the New York Court of Appeals has held that the New York State Constitution provides greater protection than the First Amendment does against legislation that incidentally impacts protected speech. *Arcara,* 68 N.Y.2d at 555–58 (striking down ordinance under the New York State Constitution after U.S. Supreme Court held that the ordinance did not implicate speech protected by the U.S. Constitution). As a result, even if the "First Amendment rights" of Plaintiffs here are "not [] implicated or sufficiently affected by" the Harassment Laws to support a First Amendment claim, Plaintiffs can still prevail on their speech-based claims under the New York State Constitution. *Id.* at 555.

  According to the New York Court of Appeals' decision in *Arcara*, in evaluating a claim brought under the New York State Constitution, "[t]he crucial factor in determining whether [a law] affects freedom of expression is the impact of the [law] on the protected activity." *Id.* at 558. "The test, in traditional terms, is not who is aimed at but who is hit." *Id.*; *see also People v. Griswold*, 821 N.Y.S.2d 394, 405 (Rochester City Ct. 2006) (applying *Arcara* to statute prohibiting panhandling).

  Here, Defendants hang their hat on their argument that the Harassment Laws, by their terms, are supposedly not aimed at Plaintiffs' contemplated conduct. (*See* Def. Br. at 10–12; Def. Reply at 2–4) But even if that were correct (which Plaintiffs dispute), under New York's Constitution, it is of no legal moment. That is because it is undisputed that Plaintiffs are "hit" by the Harassment Laws: the Harassment Law Plaintiffs have refrained from making rent demands and communicating with tenants regarding the consequences of unpaid rent due to their reasonable fear that such speech might be deemed harassment under the Harassment Laws.

(Melendez Decl. ¶¶ 21, 23–25, 29; Yang Decl. ¶¶ 34–35; Melendez Reply Decl. ¶¶ 4–9; *see also* Younger Decl., Exs. 6–7 (lawsuits asserting that landlords' notices to cure violate the Commercial Harassment Law)) Accordingly, even if Defendants were correct that Plaintiffs' First Amendment rights are not implicated by the Harassment Laws – which is not the case – Plaintiffs would still succeed on their claims under the New York State Constitution due to the incidental effects these laws have on Plaintiffs' speech.

*Second,* when invoking the four-part test articulated in *Central Hudson* to evaluate restrictions on commercial speech, the New York Court of Appeals applies a more rigorous standard to determine whether a law is "narrowly tailored" to meet a substantial state interest. *See Matter of Von Wiegen*, 63 N.Y.2d 163, 173 (1984), *Joffler v. Joint Bar Ass'n*, 51 N.Y.2d 140, 147 (1980). Specifically, the Court of Appeals requires that a law proscribing commercial speech be the "least restrictive means" of achieving the State's legitimate interest. For example, in *Von Wiegen*, the Court of Appeals made clear that the issue of narrow tailoring under New York State law hinges on "whether there is *a less restrictive alternative*," 63 N.Y.2d at 173 (emphasis added), and held that a commercial speech restriction was unconstitutional under New York law because *"[a] less drastic alternative . . .* [was] present." *Id.* at 175 (emphasis added). And in *Joffler*, applying the same legal framework, the Court of Appeals held that "a regulation which completely proscribes use of direct mail when the State's purpose can readily be achieved *by a less restrictive alternative cannot be said to be reasonable*." 51 N.Y.2d at 151 (emphasis added). New York courts, moreover, apply this more rigorous standard of intermediate scrutiny in a range of contexts and circumstances where speech rights are implicated. *See, e.g.*, *id.* (striking down statute restricting direct mailings); *Time Square Books, Inc. v. City of Rochester*, 645 N.Y.S.2d 951, 954–56 (4th Dep't 1996) (holding that an "adult entertainment" ordinance violated the State Constitution, even though similar ordinances had "withstood every challenge made under the Federal Constitution," because "defendants [] offered no evidence suggesting that th[e] less restrictive alternatives would be any less effective").

Accordingly, under New York law, the Harassment Laws are unconstitutional if any adequate, less restrictive alternatives existed. Here, Defendants have acknowledged that there were obvious, less restrictive alternatives to the Harassment Laws – such as protections that would be conditioned on a showing of financial hardship, laws that limit protections to those whose inability to pay rent was caused by COVID-19, and laws that explicitly exclude rent demands from their reach. (*See* Plf. Br. at 22; Def. Opp. at 16–17; Plf. Reply at 9) Therefore, Defendants have not and cannot establish that the Harassment Laws are narrowly tailored to any substantial state interest under New York State constitutional law.

For one or both of these reasons, the Harassment Law Plaintiffs are likely to succeed on the merits of their claims under Article I, Section 8 of the New York State Constitution, regardless of how the Court rules on their claims under the First Amendment to the U.S. Constitution.

\* \* \* \*

       For the reasons stated above, no further discovery is necessary to decide Plaintiffs' Motion for preliminary injunctive and declaratory relief; Plaintiffs have standing to challenge all three laws at issue in this case; and the Court can grant Plaintiffs' Motion under either the First Amendment to the U.S. Constitution or Article I, § 8 of the New York State Constitution.

                                         Respectfully submitted,

                                         Stephen P. Younger

cc:  All counsel of record