

**PAMELA A. KOPLIK**
Phone: (212) 356-2187
Fax: (212) 356-2019
pkoplik@law.nyc.gov

**THE CITY OF NEW YORK**
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**JAMES E. JOHNSON**
*Corporation Counsel*

**CARLOS F. UGALDE ALVAREZ**
Phone: (212) 356-2212
Fax: (212) 356-2019
cugalde@law.nyc.gov

September 29, 2020

**VIA ECF**
Hon. Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *Melendez v. City of N.Y.*, No. 20 Civ. 5301 (RA)

Your Honor:

      On behalf of Defendants in the above-entitled action, we write to inform the Court of a final update regarding New York City Local Law No. 55 of 2020 (the "Guaranty Law"). Yesterday, September 29, 2020, the Mayor of the City of New York signed Proposed Introduction No. 2083-A, which then became New York City Local Law No. 98 of 2020 ("Local Law No. 98"), a copy of which is annexed hereto. As stated in our previous correspondence, Local Law No. 98, *inter alia*, extends the expiration date of the Guaranty Law's personal guaranty protection provisions from September 30, 2020 to March 31, 2021.

      Section 1 of Local Law No. 98 sets forth the New York City Council's "[d]eclaration of legislative intent and findings" concerning the enactment of the Guaranty Law and Local Law No. 98. It states, in relevant part, that Local Law No. 98 is intended to provide businesses covered by the Guaranty Law with "a reasonable recovery period with a duration that is comparable to the period of time that these businesses were forced to close or operate with significant limitations on indoor occupancy and thereby to provide them with an opportunity to not only survive but also to generate sufficient revenues to defray owed financial obligations."

      Contrary to Plaintiffs' assertions in their September 28, 2020 letter to the Court (ECF No. 69), the Guaranty Law, as amended by Local Law No. 98, neither constitutes a substantial impairment of Plaintiffs' contractual relationships nor violates the Contract Clause of the United States Constitution. For all the reasons stated in Defendants' motion papers (*see* ECF Nos. 39, 57 and 65) and at oral argument, Plaintiffs' Contract Clause claims should be dismissed.

2

        Respectfully submitted,

           /s/

        Pamela A. Koplik
        Carlos Fernando Ugalde Alvarez
        Assistant Corporation Counsels

cc:       Plaintiffs' Counsel of Record (via ECF)

LOCAL LAWS
OF
THE CITY OF NEW YORK
FOR THE YEAR 2020

_____

No. 98
_____

Introduced by Council Members Rivera, the Speaker (Council Member Johnson), Kallos, Rosenthal, Chin, Powers, Rose and Louis.

## A LOCAL LAW

**To amend the administrative code of the city of New York, in relation to extending temporary personal guaranty protection provisions for commercial tenants impacted by COVID-19**

*Be it enacted by the Council as follows:*

Section 1. Declaration of legislative intent and findings. a. The council finds and declares that:

1. The city is in the midst of a local, state, and federally declared disaster emergency due to a global pandemic. While the numbers increase daily, the 2019 novel coronavirus, or COVID-19, has killed over 900,000 people worldwide, over 200,000 people in the United States, and about 33,000 people in New York state. Within the city itself, about 243,000 people have been infected with the disease and about 24,000 people have likely died because of it.

2. Governments around the world, the country, and the state, including the city, have taken drastic measures to limit the spread of COVID-19. While many of these measures appear to have helped slow the progress of the disease, many have also contributed to a catastrophic impact on the city's economic and social livelihood.

3. For example, as part of the effort to stop the spread of COVID-19, the governor in March 2020 issued executive order numbers 202.3, 202.6, and 202.7. These orders, as subsequently amended and extended through other executive orders, and interpreted through guidance issued by

the New York state departments of economic development and health, effectively prohibited restaurants, bars, gyms, fitness centers, movie theaters, non-essential retail stores, barbershops, hair salons, nail salons, tattoo or piercing parlors, and related personal care services from operating with any indoor occupancy.

4. These operational limitations, while necessary to combat the spread of a global pandemic, have contributed to the severe economic damage suffered by the city. For example, the most recently available labor statistics from the New York state department of labor relating to the businesses subject to these orders indicate that:

(a) The city lost 151,100 jobs in the food services and drinking places subsector from February 2020 to July 2020, leaving employment in that subsector down 48.9% in July 2020 compared to July 2019. This includes a loss of 94,000 jobs in the full service restaurants industry between February 2020 and July 2020, which left employment in that industry down 57.7% in July 2020 compared to July 2019.

(b) Within the retail trade sector, the city lost about 34,700 jobs from industries subject to the above-described executive orders; this includes a combined loss of 29,300 jobs in the clothing stores industry, the furniture and home furnishings stores subsector, and the sporting goods, hobby, book, and music stores subsector between February 2020 and July 2020, which left employment in those industries and subsectors down 49.5%, 38.5%, and 24.2%, respectively, in July 2020 compared to July 2019.

(c) Within the personal and laundry services subsector, which includes barbershops, hair salons, and other personal care businesses, the city lost 22,800 jobs, leaving employment in that subsector down 34.4% in July 2020 compared to July 2019.

2

5. While businesses may be willing to weather the economic hardships imposed upon them by governmental measures to combat COVID-19 by either staying open or temporarily closing and later reopening, individual owners and other natural persons who personally guarantee the financial obligations of these businesses face a different and more substantial risk than losing revenue and profit. They risk losing their personal assets, including their possessions and even their own homes, transforming a business loss into a devastating personal loss. This is particularly a risk for small businesses, as the scale of the financial obligations of larger businesses generally renders having a natural person guarantee those obligations impracticable.

6. If these individual owners and natural persons are forced to close their businesses permanently now or to suffer grave personal economic losses like the loss of a home, the economic and social damage caused to the city will be greatly exacerbated and will be significantly worse than if these businesses are able to temporarily close and return or, failing that, to close later, gradually, and not all at once.

7. For the foregoing reasons, the council passed, and the mayor signed, local law number 55 for the year 2020, which provides temporary protections to natural persons who personally guarantee the financial obligations of businesses subject to the substantial occupancy limitations imposed by the above-described executive orders issued by the governor. These protections are, however, due to expire on September 30, 2020.

8. As of September 30, 2020, these businesses will have been either prohibited from operating with any indoor occupancy at all, or subject to significant indoor occupancy restrictions, for over six months, and it is likely that such significant indoor occupancy restrictions will continue for the foreseeable future as the so-called first wave of the COVID-19 crisis has not yet fully subsided and

there is substantial risk of a second wave of the disease beginning in the fall or winter of 2020, particularly as the city enters its normal flu season.

9. Beginning on September 30, 2020, most of the businesses subject to the above-described executive orders will be able to operate with at least minimal indoor occupancy. Extending the duration of the personal liability protections contained within local law number 55 for the year 2020 by six months, as this local law does, is intended to provide these businesses a reasonable recovery period with a duration that is comparable to the period of time that these businesses were forced to close or operate with significant limitations on indoor occupancy and thereby to provide them with an opportunity to not only survive but also to generate sufficient revenues to defray owed financial obligations.

10. As with local law number 55 for the year 2020 before it, this local law does not, nor is it intended to, limit any other lawful remedies that a landlord may be able to seek against a commercial tenant itself, such as bringing suit against that tenant for damages; collecting or offsetting financial obligations by using the revenues, inventory, equipment, or other assets of that tenant; or evicting or declining to renew the lease or rental agreement of that tenant.

11. This local law also modifies the language of local law number 55 for the year 2020 to clarify the council's intent that its personal liability protections apply regardless of whether a personal liability provision appears within a commercial lease or other rental agreement itself or appears within a separate agreement relating to the same property.

b. For the foregoing reasons, the council finds that it is necessary and appropriate to extend the duration of the personal liability protections in local law number 55 for the year 2020.

§ 2. Section 22-1005 of the administrative code of the city of New York, as added by local law number 55 for the year 2020, is amended to read as follows:

§ 22-1005. Personal liability provisions in commercial leases. A provision in a commercial lease or other rental agreement involving real property located within the city, *or relating to such a lease or other rental agreement,* that provides for one or more natural persons who are not the tenant under such agreement to become, upon the occurrence of a default or other event, wholly or partially personally liable for payment of rent, utility expenses or taxes owed by the tenant under such agreement, or fees and charges relating to routine building maintenance owed by the tenant under such agreement, shall not be enforceable against such natural persons if the conditions of paragraph 1 and 2 are satisfied:

1. The tenant satisfies the conditions of subparagraph (a), (b) or (c):

(a) The tenant was required to cease serving patrons food or beverage for on-premises consumption or to cease operation under executive order number 202.3 issued by the governor on March 16, 2020;

(b) The tenant was a non-essential retail establishment subject to in-person limitations under guidance issued by the New York state department of economic development pursuant to executive order number 202.6 issued by the governor on March 18, 2020; or

(c) The tenant was required to close to members of the public under executive order number 202.7 issued by the governor on March 19, 2020.

2. The default or other event causing such natural persons to become wholly or partially personally liable for such obligation occurred between March 7, 2020 and [September 30, 2020] *March 31, 2021*, inclusive.

§ 3. The department of small business services, or another mayoral agency or office designated by the mayor, shall conduct an information and outreach campaign to educate commercial tenants affected by this local law about its protections.

§ 4. This local law takes effect immediately.


THE CITY OF NEW YORK, OFFICE OF THE CITY CLERK, s.s.:

I hereby certify that the foregoing is a true copy of a local law of The City of New York, passed by the Council on September 23, 2020 and approved by the Mayor on September 28, 2020.

MICHAEL M. McSWEENEY, City Clerk, Clerk of the Council.

CERTIFICATION OF CORPORATION COUNSEL

I hereby certify that the form of the enclosed local law (Local Law No. 98 of 2020, Council Int. No. 2083-A of 2020) to be filed with the Secretary of State contains the correct text of the local law passed by the New York City Council and approved by the Mayor.

STEPHEN LOUIS, Acting Corporation Counsel.