UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Marcia Melendez, Jarican Realty Inc., 1025 Pacific LLC, Ling Yang, Top East Realty LLC, Haight Trade LLC, Elias Bochner, and 287 7th Avenue Realty LLC,<br><br>*Plaintiffs,*<br><br>v.<br><br>The City of New York, a municipal entity, Bill de Blasio, as Mayor of the City of New York, Louise Carroll, Commissioner of New York City Department of Housing Preservation & Development, and Jonnel Doris, Commissioner of New York City Department of Small Business Services,<br><br>*Defendants.* | 20 CV 05301 (RA) |

**COBY KALTER**, declares under the penalties of perjury, pursuant to 28 U.S.C. 1746, as follows:

1. I am the Executive Director of Launch Services of the New York City Department of Small Business Services ("SBS"). SBS's mission is to support businesses in the City's five boroughs as they start, operate, and grow. The services that we provide to these businesses foster thriving neighborhoods and ultimately help all New Yorkers.

2. Over the course of the pandemic, SBS started or expanded 51 initiatives and programs to support New Yorkers. Our work was guided by four key principles: equity, adaptability, innovation, and collaboration. One of the programs that we expanded was the Commercial Lease Assistance Program ("CLA"). During the pandemic, the CLA represented hundreds of small business commercial tenants with personal guaranties and arrears.

3.      As Executive Director of Launch Services, I oversee a portfolio of programs that support entrepreneurs in launching and growing their businesses in New York City. Included within this portfolio is the CLA. I am therefore fully familiar with the impact of Local Law 2020/55, Local Law 2020/98, and Local Law 2021/50 ("the Guaranty Law"). This declaration is based on my personal knowledge as well as conversations with SBS employees and service providers. I submit this affirmation in support of Defendants' Cross-Motion for Summary Judgment.

4.      The Guaranty Law in the wake of the COVID-19 pandemic enacted by the NYC Council in May 2020 prohibited enforcement of personal guaranties.  The law as extended applies to defaults that occurred between March 7, 2020 and June 30, 2021.

5.      The commercial real estate market is extremely landlord favorable, and without the Guaranty Law, the expectation under most commercial leases is that small business commercial tenants (and their guarantors) alone should bear the risk and the financial fallout from the pandemic. The market expectation was that landlords would be entitled to all amounts otherwise due under the lease even when small businesses could not operate.

**CLA's Work**

6.      Small businesses that could not open, or whose operations were limited, during the pandemic faced extraordinary arrears, frequently hundreds of thousands of dollars. CLA assisted many of those clients, including retirees who opened businesses as a way to supplement retirement income only to face personal liability under their personal guaranties that could instead bankrupt them.  CLA represented immigrant and minority business owners who poured their life savings into their business only to end up with thousands of dollars in debt and, facing eviction, with no clear path forward to continue earning a living.

7.  Additionally, many small business owners were not able to access pandemic relief offered by Federal or New York State government to satisfy their rent obligations. For example, the COVID-19 Pandemic Small Business Recovery Grant Program, offered by New York State, initially required that a business show profit in 2019 as a requirement for eligibility[1]. Many businesses, could not access these state funds because of this requirement. The requirement was only removed in July 2022[2], well over two years after the pandemic had started.

8.  Moreover, according to an analysis of the Association for Neighborhood and Housing Development of the Paycheck Protection Program, loans typically did not reach people or communities of color and the industries that needed them most, and for-profit landlords received loans while tenants received little to no relief.[3]

**Impact of the Guaranty Law**

9.  The Guaranty Law provided many hopeless small businesses with some leverage to negotiate reductions in arrears, payment plans, and/or the maintenance of their leases; where landlords realized they had greater incentive to negotiate a mutually beneficial settlement.

10. In many cases, without this added leverage, many landlords likely would have been quicker to terminate leases, sue for arrears under a personal guaranty, and replace their prior small business tenants—largely in those industries forced to close—with others in industries that fared better during the pandemic.

11. Landlords were often more willing to negotiate with businesses and business owners to share the financial fallout more equitably in exchange for continuing a commercial lease

---

[1] Information regarding the Small Business Grant Recovery Program can be found at: https://www.governor.ny.gov/news/governor-cuomo-announces-applications-now-open-800-million-covid-19-pandemic-small-business

[2] Information regarding the requirements for the Small Business Grant Recovery Program can be found at: https://nysmallbusinessrecovery.com/faq/

[3] An analysis of the Paycheck Protection Program can be found at: https://anhd.org/blog/new-yorks-small-businesses-left-out-paycheck-protection-program

and keeping the business operating. In this way, the Guaranty Law was essential in allowing hundreds, if not thousands, of businesses to stay open during the pandemic.

12. The Guaranty Law also protected small business owners (many from vulnerable communities) from financial ruin.

13. The Guaranty Law is a huge protection, and SBS supports it fully

14. If the law was invalidated, it would threaten the financial security of thousands of small business owners and the families and neighborhoods that those owners support.

Dated:     New York, New York
           September 22, 2022

Coby Kalter