UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Marcia Melendez, Jarican Realty Inc., 1025 Pacific LLC, Ling Yang, Top East Realty LLC, and Haight Trade LLC, Elias Bochner, and 287 7th Avenue Realty LLC

                                 *Plaintiffs*,

                       v.

The City of New York, a municipal entity, Bill de Blasio, as Mayor of the City of New York, Louise Carroll, Commissioner of New York City Department of Housing Preservation & Development, and Jonnel Doris, Commissioner of New York City Department of Small Business Services,

                                 *Defendants.*

20 CV 05301 (RA)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

                                                                   **HON. SYLVIA O. HINDS-RADIX**
                                                                   Corporation Counsel of the
                                                                      City of New York
                                                                   Attorney for Defendants
                                                                   100 Church Street, 4th Floor
                                                                   New York, NY 10007
                                                                   Tel: (212) 356-2187
                                                                   Fax: (212) 356-1148

October 28, 2022

Michelle Goldberg-Cahn,
Mark Muschenheim,
Pamela A. Koplik,
Scali Riggs,
       *of Counsel*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. II

ARGUMENT ........................................................................................................................ 1

      I.    Jurisdictional Defects Require Dismissal of the
           Complaint ............................................................................................... 1

      II.   The Contracts Clause ................................................................................. 2

  A.  Substantial Impairment ........................................................................ 2
  B.  The Guaranty Law Serves a Legitimate Purpose ................................. 3
  C.  The Guaranty Law is Reasonable and Necessary to
       Achieve its Purpose. ............................................................................ 4

CONCLUSION ................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Pages**

*California v. Texas*,
    141 S. Ct. 2104 (2021) ................................................................................................. 1, 2

*Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*,
    459 U.S. 400 (1983) ......................................................................................................... 3

*Kontrick v. Ryan*,
    540 U.S. 443 (2004) ......................................................................................................... 1

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................................................................... 1

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
    571 U.S. 191 (2014) ......................................................................................................... 1

*Melendez v. City of NY*,
    16 F.4th 992 (2d Cir. 2021) .................................................................................. 2, 4, 5, 10

*Nashville, C. & St. L. R. Co. v. Wallace*,
    288 U.S. 249 (1933) ......................................................................................................... 1

*New York v. Ferber*,
    458 U.S. 747 (1982) ......................................................................................................... 2

*R.K. v. NY City Dept. of Educ.*,
    09-CV-4478, 2011 US Dist LEXIS 32248
    (E.D.N.Y. Jan. 21, 2011 (KAM)) ..................................................................................... 3

*Sveen v. Melin*,
    ___U.S.___, 138 S. Ct. 1815 (2018) ............................................................................ 2, 3

**Statutes**

Admin. Code § 22-1005 ............................................................................................................ 5

FRCP 56(c)(4) ........................................................................................................................... 9

**ARGUMENT**

I.  **Jurisdictional Defects Require Dismissal of the Complaint**

At the outset, Plaintiffs' attempt to gloss over their suit's serious jurisdictional defect fails. Their single sentence of analysis and lone footnote do not come close to establishing jurisdiction, which they "bear[] the burden of establishing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), and which can be considered "at any time." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). It is well established that a mere claim that a statute is unconstitutional is insufficient to invoke this Court's jurisdiction. Instead, the test is whether the suit would "would be justiciable in this Court if presented in a suit for injunction." *Nashville, C. & St. L. R. Co. v. Wallace*, 288 U.S. 249, 262 (1933). Thus, courts look to the "the nature of the threatened action in the absence of the declaratory judgment suit" to determine whether jurisdiction exists. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 197 (2014).

Here, there is no "threatened action" by any defendant, and no injunction against any of the named Defendants would affect Plaintiffs' rights. The City does not enforce the Guaranty Law ("GL") against the Plaintiffs, nor would any conceivable injunction against the City preclude a guarantor from raising the GL as a defense in a breach-of-contract action. *See Lujan,* at 562 (explaining that jurisdiction is "difficult to establish" where "causation and redressability" hinge on the actions of "independent actors not before the courts"). Plaintiffs' request for a declaration that the GL is unconstitutional, untethered from "an acceptable Article III remedy" that will "redress a cognizable Article III injury" traceable to any conduct of any defendant in this suit is precisely what "Article III guards against." *California v. Texas*, 141 S. Ct. 2104, 2116 (2021).

Plaintiffs' response is to distinguish only *California v. Texas* on the basis that the provision challenged there was unenforceable, and to ignore the wealth of other authority establishing the same point (Plaintiffs' Reply Memorandum of Law ["Pls. Opp. Br."][Dkt. 110] at

6). Theirs is a distinction without a difference; the logic of the Supreme Court's opinion is that litigants may not proceed in federal court if the defendants have no capacity to enforce the law against them and have not caused them any redressable injury, regardless of why that may be the case. *California, 141 S. Ct.* at 2116. There is no "actual controversy" between the Plaintiffs and the Defendants—the only conceivable, potential controversy would be between Plaintiffs and their lessee. And an injunction from this court could not affect the "legal rights" of either Plaintiffs or Defendants here. *New York v. Ferber*, 458 U.S. 747 (1982); *see also California*, 141 S. Ct. at 2116 ("There is no one, and nothing, to enjoin."). The simple, indisputable point is that federal courts cannot grant the only relief Plaintiffs seek: "a declaration that the statutory provision they attack is unconstitutional," which is "the very kind of relief that cannot alone supply jurisdiction." *California*, 141 S. Ct. at 2116.

**II.     The Contracts Clause**

    **A.     Substantial Impairment**

In a Contracts Clause analysis, the substantial impairment inquiry asks "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Melendez v. City of NY*, 16 F.4th 992, 1033 (2d Cir. 2021) (quoting *Sveen v. Melin*, ___U.S.___, 138 S Ct 1815, 1822 (2018)). Although Plaintiff Bochner alleges that good guy guaranties are "critical" to his commercial lease agreements (Dkt. 52 "Bochner Decl." ¶ 14), the record reflects that the good guy guaranty relevant to this action was more akin to a formality.

The deposition testimony reflects that Plaintiffs know little more than the guarantor's name. D56.1 ¶¶ 95-98; Koplik Decl. [Dkt. 104], Exs. NN, VV. Plaintiffs do not have contact information for the guarantor, nor do they know the relationship between the guarantor and their tenant. *Id*. Indeed, in an effort to establish that the guarantor is a "wealthy individual"

(Pls. Opp. Br. at 4), rather than providing the court with any actual business records or even a sworn statement, Plaintiffs refer the Court to a google search, which Plaintiffs allege shows who the guarantor is and his financial status. Pls. Opp. Br. at n. 2.[1] Where, as here, a landlord has little information about a lease guarantor, the practical likelihood of recovering from the guarantor is dubious. Therefore, the GL does not substantially interfere with Plaintiffs' reasonable expectations.

In determining whether legislation operates as a substantial impairment courts also look to whether the impairment "prevents the party from safeguarding or reinstating his rights." *Sveen v. Melin*, 138 S. Ct. 1815, 1822 (2018). Although Plaintiffs refer to an email exchange in which Plaintiffs' tenant referenced the GL (Pls. Opp. Br. at 9), by no stretch of the imagination does this demonstrate that the GL prevented Plaintiffs from safeguarding their rights. While Plaintiffs chose not to pursue their tenant, the GL did not prevent them from doing so.

### B.   The Guaranty Law Serves a Legitimate Purpose

Assuming *arguendo* that this Court finds a substantial impairment, the Court must next determine if the GL has a legitimate public purpose. *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411 (1983). The GL easily meets the public-purpose test because it is designed to prevent the bankruptcies of small business owners, the firing of their employees, and the broader economic devastation brought on by a raft of business closures. Defendants' Memorandum of Law In Support of Defendants' Cross-Motion ("Dfs. Br.") (Dkt. 103), at 12-13. Plaintiffs do not seriously dispute a legitimate public purpose and instead, attempt to narrow the purpose of the GL as merely "to prevent a guarantor's personal bankruptcy" (Pls. Opp. Br. at 11)

---

[1] In any event, Plaintiffs' google search should be disregarded. *See*, *R.K. v. NY City Dept. of Educ.*, 09-CV-4478, 2011 US Dist LEXIS 32248, at *42 (E.D.N.Y. Jan. 21, 2011 (KAM)) (rejecting a counsel's google search inadmissible hearsay).

and attempt to paint a picture of the Guarantor here as a wealthy individual despite the lack of such evidence.[2] Pls. Opp. Br. at 15-16.

### C. The Guaranty Law is Reasonable and Necessary to Achieve its Purpose.

Plaintiffs fail to adequately respond to Defendants' arguments concerning the five factors identified by the Second Circuit. As to the first factor, the Second Circuit noted that the fact that the GL is not a "temporary" or "limited" impairment "weigh[s] heavily against a finding of reasonableness." *Melendez*, 16 F.4th at 1049.

The GL's structure, which is limited when viewed in context of the entirety of the lease, tracks its important public purposes. The GL covers the period of March 7, 2020 to June 30, 2021 – just under 16 months, which is a fraction of Plaintiff 7th Avenue's lease term and covers a fraction of the rent secured by Plaintiffs' guaranty. Plaintiff 7th Avenue's lease was initially for a seven-year term, and was subsequently extended for multi-year terms, with the most recent extension for a five-year term. Koplik Decl. [Dkt. 104] Ex. OO. The Council reasonably concluded that, absent relief from personal guaranties covering the period of forced business closures, the prospect of crippling personal liability would remain, creating pressure for owners to shutter businesses early. The Council was also concerned with the impact to individual guarantors who could fall into bankruptcy, and the greater impact those personal bankruptcies would have on the City's economy. Even if "permanent" the GL was appropriate.

---

[2] Defendants requested that Plaintiffs "produce all documents authored or received by the Bochner Plaintiffs concerning any investigation or inquiry into the financial health of the Guarantor, including but not limited to any and all credit inquiries." *See* Koplik Reply Decl., Ex B. Plaintiffs produced nothing concerning the alleged wealth of the guarantor and merely made a variety of objections. *Id*. Plaintiffs now suggest that performing an internet search on "Mitch Cantor" reveals any necessary facts about the guarantor (Pls. Opp. Br. at 4, fn. 2.), but tellingly the name is common and several different Mitch Cantors appear in any google search. Defendants have no way of knowing which "Mitch Cantor" is the actual guarantor here because Plaintiffs deprived them of such information.

Plaintiffs nevertheless incorrectly allege that the GL effectuates a "complete and permanent rent cancellation." Pls. Opp. Br. at 18. In fact, the GL does not repudiate debt arising from unpaid rent. Rather, the GL *may*, in an enforcement action where it is both applicable and properly raised as a defense, inhibit one avenue of recovery available to Plaintiffs for a portion of rent debt.[3] *See* Admin. Code § 22-1005.

As to the second factor, the Second Circuit held that the GL's lack of a requirement that businesses commit to reopen after the forced closures ended weighed against its reasonableness. *Melendez*, 16 F.4th at 1040. The Second Circuit nonetheless left open the opportunity for record development on this point. *Id* at 1041. In fact, the record is clear, business owners wanted to remain open or to reopen and felt that the GL would give them that ability. *See*, *e.g.*, D56.1 ¶ 35; Koplik Decl. [Dkt. 104], Ex. E1 at p. 146. The Council also heard similar testimony in support of each extension of the GL.[4] For example, in support of the first extension of the GL one business owner submitted written testimony stating:

> I have owned and operated Andrews Coffee Shop at 463 7th Ave since 1983. I have always paid my rent on the 1st of each month. Since March 16, 2020 we have been closed as a result of the restriction due to COVID19, but we plan on reopening on September 30 as per guidelines with 25% capacity. . . . Unless the personal liability protection is extended I and many others would face the choice of closing or face devastating personal liability.

In support of the second extension of the GL, Kathleen Reilly, the NYC

---

[3] Plaintiffs also fail to adequately rebut Defendants' arguments about the built-in limitations of the GL, and give short shrift to the other available remedies under commercial leases, such as, recovering unpaid rent and interest from tenants, charging late payment fees, applying security deposit funds, terminating a tenant's right to possession, recovering damages, and selling property in the premises and applying proceeds to unpaid rent. Pls. Opp. Br. at 16. Notably, Plaintiffs fail to even address the fact that at least a portion of the alleged amounts due pursuant to the Lease herein accrued prior to March 7, 2020 and is still conceivably recoverable from the Guarantor despite the GL. *See* D56.1 ¶ 99; Koplik Decl. [Dkt. 104], Ex.SS.

[4] Plaintiffs repeatedly state that Defendants only rely on the "hearing testimony that the Second Circuit has already reviewed." Pls. Opp. Br. at 12. However, Plaintiffs patently ignore the voluminous records of the two extension bills that were not before the Second Circuit. *See* Koplik Decl. [Dkt. 104] at ¶ 49-86 and Exs. O-MM.

Government Affairs Coordinator for the New York State Restaurant Association, testified:

> [T]hree more months of personal liability protection would be a meaningful way for the city to assist the restaurant industry in our reopening and recovery. . . . Many operators are in debt, many are still behind on rent, and extending the protection against personal liability enforcement will make it so much easier for operators to see the light at the end of the tunnel.

*See* Koplik Decl. [Dkt. 104], Ex. DD at p. 16.

The Council reasonably concluded that requiring a commitment to reopen was simply unnecessary. Rather than offer a meaningful rebuttal, Plaintiffs attempt to minimize record testimony as "anecdotal" (*see generally* Pls. Opp. Br.) and posit that the Council could have used business owners' desire to remain open to condition the GL on a promise to reopen. Pls. Opp. Br. at 19. That the Council could have drafted the GL to include a reopening condition, does not mean that such a condition was necessary for the GL to survive Constitutional scrutiny.[5]

As to the Second Circuit's third factor of concern - the allocation of economic burden, Plaintiffs likewise fail to adequately address Defendants' arguments. First Plaintiffs fail to meaningfully respond to the potential to mitigate the economic burden. The GL does not render unenforceable or diminish Plaintiffs' right to recover the tenant's rental payments during the applicable time period, to enforce the tenant's rental obligation in a court proceeding or ability to apply often substantial security deposit funds towards unpaid rent. Dfs. Br. at 20. Plaintiffs argue that such an "argument is divorced from the real world" and "the record in this action." Pls. Opp. Br. at 20. However, the record instead reveals that Plaintiffs never attempted to collect unpaid rent

---

[5] Plaintiffs argue that because the GL does not contain a reopening condition, their tenant vacated the premises "availing itself of the GL." Pls. Opp. Br. at 19. The GL applies to guarantors, not tenants. Rather than make any concerted effort to negotiate with its tenant, to commence an enforcement action against its tenant, or otherwise enforce the lease against its tenant, Plaintiffs chose to do nothing.

6

through a Court proceeding.⁶ Defendant's Statement of Material Undisputed Facts dated September 23, 2022 ("D56.1") (Dkt. 102) at ¶¶ 95 96. Moreover, the record reveals that Plaintiffs applied $57,000 of security deposit toward unpaid rent (D56.1 at ¶ 101), approximately one-third of the alleged outstanding rent balance. *See* Koplik Decl. [Dkt. 104], Exhibit SS at 2. The record makes clear that Plaintiffs' economic burden was already partially mitigated through the application of the security deposit and could have potentially been further mitigated by Plaintiffs seeking additional recovery through litigation.

Next, Plaintiffs fail to adequately address the Defendants' argument that the GL was intended to encourage Landlords to negotiate leases with their tenants for the benefit of the economy as a whole. Plaintiffs merely allege that the record shows no negotiation here and that that there is no "empirical data to suggest that [such negotiation and renegotiation] occurred." Pls. Opp. Br. at 21. However, contrary to Plaintiffs' protestations, while there may be no empirical data, *per se*, the record contains much testimony concerning the impact that the GL had on renegotiations of leases. *See*, e.g., Koplik Decl. [Dkt. 104], Ex. O at 32: 4-16; Kalter Decl. at ¶¶ 9-14; Ex. DD at 28-29, 32.

Plaintiffs' also fail to rebut Defendants' argument that it was reasonable for the Council to conclude that, unlike personal guarantors, commercial landlords were in a far better position to bear the economic burden. Instead, Plaintiffs point to the Second Circuit's statement regarding the record before it. Pls. Opp. Br. at 20. However, the record of the GL extensions were

---

⁶ Despite Plaintiffs urging otherwise (see Pls. Opp. Brief at 2-3, 9), sending a few e-mails to the Tenant is not the same as seeking recovery through litigation. Plaintiffs, as sophisticated commercial landlords know this full well. Indeed, it is undisputed that currently Plaintiff 287 7th Avenue is in litigation with the new tenant and the guarantor of the subject premises regarding unpaid rent. *See* Koplik Decl. [Dkt. 104], Ex. NN at 59:8-11, Ex. VV at 50:24-51:3; Koplik Reply Decl., Ex A.

7

not before the Second Circuit. The reasoning of the Council concerning economic burden was contained in the "declaration of legislative intent and findings" in both extensions, which stated:

> While businesses may be willing to weather the economic hardships imposed upon them by governmental measures to combat COVID-19 by either staying open or temporarily closing and later reopening, individual owners and other natural persons who personally guarantee the financial obligations of these businesses face a different and more substantial risk than losing revenue and profit. They risk losing their personal assets, including their possessions and even their own homes, transforming a business loss into a devastating personal loss. This is particularly a risk for small businesses, as the scale of the financial obligations of larger businesses generally renders having a natural person guarantee those obligations impracticable.

*See* Koplik Decl. [Dkt. 104], Exs. Z and MM at 3.

The GL cannot be viewed in isolation but must be examined in light of other legislative initiatives and City agency initiatives. Dfs. Br. at 21. In response, Plaintiffs merely assert that the City agency initiatives were available to both commercial tenants and landlords alike.[7] Pls. Opp. Br. at 21. And this argument is belied by the fact that a number of business owners testified to being unable to access the very same SBA loan funds that Bochner himself received. *See* D.56.1 ¶37, 105; Koplik Decl.[DKt. 104] Ex C at pp. 10-28, Ex. VV 42:13-44:02.

As to the fourth factor of concern – that the GL is not conditioned on need – Plaintiffs' arguments likewise fail. First, Plaintiffs persist in their erroneous assertion that the full record was before the Second Circuit. Pls. Opp. Br. at 22. In fact, *none* of the legislative record for either of the extensions were submitted to this Court in prior motion practice or before the Second Circuit. *See* Koplik Decl. [Dkt. 104] at ¶ 49-86 and Exs. O-MM. More importantly, the expanded record (including the legislative record of the extensions) is replete with testimony from small

---

[7] Plaintiffs also make the unsupported allegation that "if anything, federal and state assistance focused on assisting small business tenants even more than the commercial landlord." Pls. Opp. Br. at 21. Plaintiffs fail to cite to any support in the record for such a sweeping statement.

business owners, and large institutional organizations that advocate for them,[8] demonstrating the ongoing and urgent need for personal liability relief. *See* D56.1 at ¶¶ 17-36, 55-65, 77-79; *See also*, Kalter Decl at ¶¶ 9-14. Plaintiffs' assertion that Defendants have failed to identify any evidence of need beyond "the pooled general knowledge of its members" (Pls. Opp. Br. at 23) is simply not true.[9]

Moreover, Plaintiffs mischaracterize Defendant's position on this fourth factor, erroneously arguing that Defendant's position is that tailoring the GL to natural persons is sufficient to address need. Pls. Opp. Br. at 22. However, this simplification fails to address the nuances of Defendants' argument, which is that Council could reasonably predict that if the GL was conditioned on need, business owners would choose to close and limit their personal liability, even in circumstances where losing substantial personal assets would not necessarily lead to an owner's impoverishment. Dfs. Br. at 22. And the Council could judge that its tailoring of the GL solely to natural persons guaranteeing businesses that were forced to close was sufficient, without requiring an additional layer of bureaucracy to try to define and adjudicate "need" when time was short and the requirement for action pressing. *Id*. Plaintiffs have no responses to these arguments.

As to the fifth factor – the lack of compensation to landlords – Plaintiffs concede that the Second Circuit noted that "compensation is not always necessary for contract-impairing legislation." Pls. Opp. Br. at 25. Moreover, Plaintiffs do not address the Defendants' arguments that the GL cannot be viewed in isolation and that "other pandemic-related financial assistance to

---

[8] *See* Dfs. Br. at 22, fn. 14, listing institutional organizations.
[9] Plaintiffs' attempt to refute the Coby Kalter declaration also fails. Plaintiffs erroneously assert that the declaration is contradicted by the testimony of the Commissioner of SBS without a clear explanation of how and why. Additionally, Plaintiffs' complaint that they were not provided an opportunity to depose Mr. Kalter is without merit. Plaintiffs failed to either serve deposition notices or request any discovery. Moreover, Mr. Kalter's declaration is not inadmissible hearsay and was appropriately submitted in support of Defendants' cross-motion pursuant to FRCP 56(c)(4).

9

contracting parties may bear on the reasonableness of impairment without compensation." *Id., citing Melendez*, 16 F. 4th at fn. 82. Indeed, Plaintiffs do not even dispute the essential facts that Plaintiffs were able to weather the pandemic by "borrow[ing] from a separate entity that [Mr. Bochner] owned to be able to pay the taxes" (Pls. Opp. Br. at 24), obtaining an SBA loan in the amount of $150,000 (Pls. Opp. Br. 24), and leasing the vacated commercial space with the fixtures, furniture and equipment left behind by the tenant to a different restaurant in October 2020 (Plaintiffs' Responses to D56.1 at ¶¶ 90, 102)(Dkt. 111). *See* Dfs. Br. at 23-24. Instead, Plaintiffs try to paint a different picture of a "wealthy guarantor" when no such facts are in the record.[10] In light of the facts in the record, including the ability of Plaintiffs to weather the pandemic, this fifth factor of concern should not weigh heavily.

## CONCLUSION

As set forth herein, and in Defendants' cross-moving papers, Defendants respectfully request that the Court grant Defendants' cross-motion for summary judgment dismissing the Am. Compl. in its entirety.

Dated:   New York, New York
         October 28, 2022

                **HON. SYLVIA O. HINDS-RADIX**
                Corporation Counsel of the
                 City of New York
                Attorney for Defendants
                100 Church Street, 4th Floor
                New York, New York 10007

                By:        /s/
                      Pamela A. Koplik
                      Scali Riggs
                      E-mails: pkoplik@law.nyc.gov
                                 sriggs@law.nyc.gov

---

[10] *See* fn. 2.